IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD MCGINNIS, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES COLD STORAGE, INC.,<br><br>      Defendant. | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Richard McGinnis brings this Class Action Complaint and Demand for Jury Trial against Defendant United States Cold Storage, Inc. ("US Cold" or "the Company") to put a stop to its unlawful collection, use, and storage of Plaintiff's and the proposed Class's sensitive, personal biometric data. Plaintiff alleges as follows based upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. This is an action under the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") brought by Plaintiff on behalf of a putative class of similarly-situated individuals as described herein.

2. Since at least 2012, individuals who perform work for US Cold in Illinois have been required to scan their fingerprint and/or handprint in US Cold's time clocks. That is because US Cold uses a biometric time tracking system that requires employees to use their fingerprint and/or handprint as a means of authentication, instead of key fobs or

identification cards.

3. Because US Cold never provided Plaintiff or any class member with information about its biometric scanning system, Plaintiff was unsure whether the system used his whole handprint scan or just a fingerprint.

4. While there are benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards-which can be changed or replaced if stolen or compromised-fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes workers to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, workers have no means by which to prevent identity theft and unauthorized tracking.

5. Recognizing the need to protect its citizens from situations like these, Illinois enacted the BIPA specifically to regulate companies that collect and store Illinois citizens' biometrics such as fingerprints.

6. Despite this law, US Cold disregards its workers' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, US Cold has violated (and continues to violate) the BIPA because it did not (and continues not to):

- Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their fingerprints and/or handprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints and/or handprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints and/or handprints, as required by the BIPA.

7. Accordingly, this Complaint seeks an Order: (i) declaring that Defendant's conduct violates BIPA; (ii) requiring Defendant to cease the unlawful activities addressed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

8. Plaintiff Richard McGinnis is an adult resident of Chicago, Illinois. He worked for US Cold from 2011 until in or around April 2015.

9. Plaintiff brings this action on behalf of a putative class of similarly-situated individuals, namely, all individuals who performed work for US Cold in Illinois who had their fingerprints and/or handprints improperly collected, captured, received, otherwise obtained or disclosed by US Cold.

10. Defendant US Cold is a nationwide company, providing temperature-controlled warehousing and transportation. It is a foreign corporation incorporated under the laws of New Jersey with its headquarters in a state other than Illinois. Notwithstanding the above, US Cold does business in Illinois, operates at least two locations in Illinois, and is registered with the Illinois Secretary of State.

## JURISDICTION

11. The Court has personal jurisdiction over Plaintiff and the class he seeks to represent because they are citizens of the State of Illinois and/or work(ed) in the Sate of Illinois.

12. The Court has personal jurisdiction over Defendant US Cold because it does business in the State of Illinois, is registered with the Illinois Secretary of State, and its conduct in the State of Illinois underlies all claims in this suit.

3

13. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 and is between citizens of different states.

**FACTUAL BACKGROUND**

**I.     The Biometric Information Privacy Act.**

14. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

15. In late 2007, a biometrics company called Pay by Touch - which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions - filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records - which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data - could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

16. Recognizing the "very serious need [for] protections for the citizens of Illinois

when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

17. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless *it first:*

> (1) informs the subject in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

18. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

19. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and - most importantly here - fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

20. The BIPA also established standard for how employers must handle Illinois employees' biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and fingerprints. *See* 740 ILCS 14/10. Biometric information is separately

5

defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

21. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in this conduct must put in place certain reasonable safeguards.

**II.     Defendant Violates the Biometric Information Privacy Act.**

22. By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented using biometric data as an authentication method stopped doing so. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to the public's discomfort with the use of its biometric data. Despite the recognized dangers of using biometric data in the private sector, employers have failed to follow retailers' leads in dropping it as an identification method. In fact, many employers now require their employees to register their biometric data, viewing it as a cost-effective method of authentication.

23. Unfortunately, US Cold failed to take note of the retail industry's trend in recognizing the dangers in storing biometric identifiers and the passage of Illinois law governing the collection and use of biometric data. US Cold continues to collect, store, and use its workers' biometric data in violation of the BIPA.

24. Specifically, since the implementation of the biometric data system, individuals working at US Cold have been required to have their fingerprint and/or handprint scanned in order to enroll them in US Cold's fingerprint and/or handprint database.

25. US Cold uses a worker time tracking system that requires workers to use their fingerprint and/or handprint as a means of authentication. Unlike a traditional time clock, workers have to use their fingerprints and/or handprints to "punch" in to or out of work, in addition to punching in the last four digits of their social security numbers.

26. Unfortunately, US Cold fails to inform its workers the extent of the purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

27. US Cold similarly fails to provide its workers with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' biometric data when the initial purpose for collecting or obtaining their fingerprints and/or handprints is no longer relevant, as required by the BIPA. A worker who leaves the company does so without any knowledge of when their biometric identifiers will be removed from US Cold's databases - or if they ever will be.

28. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as US Cold's - where workers are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so - is so dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing a critical point: it is crucial for people to understand when providing biometric identifiers who exactly is collecting their biometric data, where it will be transmitted to, for what purposes, and for how long. But US Cold disregards these obligations, and instead unlawfully collects, stores, and uses

7

its workers' biometric identifiers and information.

29. Ultimately, US Cold not only disregards its workers' privacy rights, but it also violates BIPA.

### III. Plaintiff McGinnis' Experience.

30. Plaintiff McGinnis performed worked for US Cold between 2011 and 2015. During the time since US Cold implemented its biometric system, McGinnis has worked at more than one of Defendant's Illinois locations.

31. At each location where Plaintiff worked, and upon information and belief at all Illinois US Cold locations, US Cold's practices regarding its biometric systems are identical.

32. After US Cold implemented its biometric system in or around mid-2012, Plaintiff was required to scan his fingerprint and/or handprint so that US Cold could use it as an authentication method to track his time.

33. US Cold subsequently stored McGinnis' fingerprint data in its databases.

34. Each time Plaintiff began and ended his workday he was required to scan his fingerprint and/or handprint.

35. Plaintiff has never been informed of the specific limited purposes or length of time for which US Cold collected, stored, or used his fingerprint and/or handprint.

36. Plaintiff has never been informed of any biometric data retention policy developed by US Cold, nor has he ever been informed of whether US Cold will ever permanently delete his fingerprint and/or handprint.

37. Plaintiff has never been provided with nor ever signed a written release allowing US Cold to collect or store his fingerprint and/or handprint.

38. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by US Cold's violations of the BIPA alleged herein.

39. As a result of US Cold's conduct, Plaintiff has experienced bodily injury in the form of mental anguish. For example, Plaintiff experiences mental anguish and injury when thinking about what would happen to his biometric data if US Cold went bankrupt, whether US Cold's biometric system is susceptible to hacking or other theft, whether US Cold will ever delete his biometric information, and whether (and to whom) US Cold shares his biometric information.

40. Plaintiff seeks liquidated damages under BIPA as compensation for the injuries US Cold has caused.

## CLASS ALLEGATIONS

41. Upon information and belief, the practices, policies, and consequences pertinent to US Cold's biometric system as described above, in Paragraphs 32-40 in particular, applied to each Class member.

42. Class Definition: Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of himself and a class of similarly situated individuals, defined as follows:

> **All individuals who performed work for US Cold in the State of Illinois, who had their fingerprints and/or handprints collected, captured, received, otherwise obtained, or disclosed by US Cold.**

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons

9

who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

43. **Numerosity:** The exact number of Class members is unknown to Plaintiff at this time, but likely ranges between 200-600 individuals. It is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of workers who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records

44. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

- whether US Cold collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

- whether US Cold collected, captured, or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

- whether US Cold properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

- whether US Cold obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

- whether US Cold has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information to any third parties;

- whether US Cold has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

- whether US Cold developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

- whether US Cold complies with any such written policy (if one exists);

- whether US Cold used Plaintiff's and the Class's fingerprints to identify them; and

- whether US Cold's violations of the BIPA were committed negligently.

45. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting her action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

46. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual

11

litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, et seq.**
**(On Behalf of Plaintiff and the Class**)

47.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48.    The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored , and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information." 740 ILCS 14/15(b) (emphasis added).

49.    The BIPA also prohibits private entities from disclosing a person's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(l).

50.    The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and-importantly-deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a

retention schedule and guidelines for permanent deletion of biometric data (i.e., when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/1 5(a).

51. US Cold failed and continues to fail to comply with these BIPA mandates.

52. US Cold qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

53. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by US Cold (in the form of their fingerprints and/or handprints), as explained in detail in Sections II-III. *See* 740 ILCS 14/10.

54. Plaintiffs and the Class's biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

55. US Cold violated 740 lLCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

56. US Cold violated 740 ILCS 14/15(b)(l) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

57. US Cold violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

58. US Cold violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its customers' biometric identifiers and biometric information.

59. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers

and biometric information as described herein, US Cold violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BlPA, 740 ILCS 14/1, et seq.

60. On behalf of himself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring US Cold to comply with the BlPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages assessed per violation for each of US Cold's violations of the BlPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

61. Plaintiff incorporates the foregoing allegations as is fully set forth herein.

62. US Cold owed Plaintiff and the Class members a duty of reasonable care. That duty required that US Cold exercise reasonable care in the collection and use of Plaintiff's and the Class members; biometric identifiers or biometric in formation. Specifically, US Cold was required to collect, retain, store, and use Plaintiff's and the Class's biometric information and identifiers in compliance with the standards set forth by the BIPA.

63. Additionally, US Cold owed Plaintiff a heightened duty - under which US Cold assumed a duty to act carefully and not put Plaintiff at undue risk of harm - because of the employment relationship of the Parties.

64. US Cold breached its duties by failing to implement reasonable procedural safeguards around the collection and use of Plaintiff's and the Class's biometric identifiers and biometric information.

14

65. Specifically, US Cold breached its duties by failing to properly inform Plaintiff in writing of the specific purpose or length of time for which his fingerprint was being collected, stored, and used.

66. US Cold also breached its duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's or the Class's fingerprints.

67. US Cold's breach of its duties proximately caused and continues to cause Plaintiff mental anguish and mental injury. For example, Plaintiff experiences mental anguish when thinking about what would happen to his biometric identifiers or information if US Cold went bankrupt, whether US Cold will ever delete his biometric identifiers or information, the susceptibility of his biometric information to theft, and whether (and to whom) US Cold shares his biometric identifiers or information.

68. Upon information and belief, the Class experienced and continues to experience the same injuries as the Plaintiff.

69. Accordingly, Plaintiff seeks an order declaring that US Cold's conduct constitutes negligence, and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

B. Declaring that US Cold's actions, as set out above, violate the BIPA;

      C.      Awarding statutory damages for each of Defendant's violations of the BlPA, pursuant to 740 ILCS 14/20;

      D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring US Cold to collect, store, and use biometric identifiers or biometric information in compliance with the BlPA;

      E.      Declaring that US Cold's actions, as described above, constitute either negligence or reckless disregard;

      F.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees and costs;

      G.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

      H.      Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: November 7, 2017              Respectfully submitted,

Alejandro Caffarelli (#6239078)      RICHARD MCGINNIS, individually and on
Lorrie T. Peeters (#6290434)         behalf of all others similarly situated,
Caffarelli & Associates Ltd.
224 S. Michigan Ave., Ste. 300
Chicago, IL 60604                     By: /s/ Alejandro Caffarelli
Tel. (312) 763-6880                    Attorney for the Plaintiff